**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

GABRIEL BRITO,

Petitioner,

v.

RONALD MALONE,

Respondent.

Case No. 17-CV-135-JPS

**ORDER**

## 1. INTRODUCTION

In June 2012, a jury in the Milwaukee County Circuit Court found Petitioner guilty of two counts of second-degree sexual assault. *See State of Wisconsin v. Gabriel A. Brito*, 2011-CF-44, Milwaukee County Circuit Court, Court Record Events Report, available at: https://wcca.wicourts.gov. Petitioner was sentenced to four years of imprisonment and five years of supervised release. *Id.* He appealed on the ground that the trial court had erroneously denied a motion to withdraw submitted by his counsel. That appeal was denied. *State of Wisconsin v. Brito*, 871 N.W.2d 866, 2015 WL 5840711 (Wis. Ct. App. Oct. 8, 2015). Petitioner's subsequent petition for review to the Wisconsin Supreme Court was rejected on February 3, 2016. (Docket #26-3). Petitioner filed the instant petition for a writ of *habeas corpus* on January 30, 2017. (Docket #1). After a multitude of requests for extensions, the petition is now, finally, fully briefed. For the reasons explained below, it must be denied.

## 2. BACKGROUND

Petitioner's criminal case required two trials. The first, conducted in December 2011, ended with a hung jury. The second, conducted in June

2012, resulted in Petitioner's conviction. Prior to the trials, Petitioner had been represented by two attorneys in succession, one appointed and one retained. Both were replaced when Petitioner had disagreements with them. Paul Bonneson ("Bonneson"), who served by appointment as Petitioner's third attorney, represented Petitioner at his first trial.

In January 2012, the prosecution announced that it would re-try Petitioner. (Docket #26-7 at 2). Bonneson then made an oral motion to withdraw his representation at Petitioner's insistence. *Id.* at 6. The trial court asked Petitioner why he wanted Bonneson to withdraw. *Id.* Petitioner said "because we have a conflict of interest." *Id.* When asked what that conflict was, Petitioner made vague statements about various disagreements:

> Certain aspects. He failed to bring out various arguments on other strategic form during the trial that he should use, and elements that he should have brought out that would have been very helpful to my own testimony. He just -- I don't know that he can serve me adequately, have the state of mind that we're gonna have, which he expressed to me again.

*Id.* The trial court then inquired of Bonneson as to his ability to work with Petitioner. *Id.* at 6–7. Bonneson responded that it was not easy but that he thought they could work together. *Id.* at 7. "[T]he problem," Bonneson explained, was that "every time . . . I say something that he doesn't really like, then he tells me to withdraw. And I keep going through this with him." *Id.*

Noting that Petitioner had already fired two previous attorneys, the trial court denied the motion to withdraw. *Id.* It found that Petitioner would likely have the same issues with any newly-appointed attorney. *Id.* at 8.

Thus, it was better for Petitioner to stay with Bonneson, who was intimately familiar with the case and had ably represented Petitioner in the December 2011 trial. *Id.* at 9–10. To the extent there was disharmony between Petitioner and Bonneson, it stemmed from Bonneson's duty to give honest and sound advice on Petitioner's desired strategic choices. *Id.* Petitioner stated that he felt that Bonneson did not want to work with him, but the trial court countered that Bonneson had just said the opposite. *Id.* at 10.

A final pretrial conference was held in March 2012. Bonneson stated that he was ready for trial, but that Petitioner had renewed his request for Bonneson to withdraw. (Docket #26-8 at 2). Petitioner further requested that he be allowed to proceed *pro se* because "there's some merits that Mr. Paul Bonneson doesn't want to raise[.]" *Id.* Petitioner later stated that he felt there were "certain merits" that Bonneson "did not litigate properly" during the last trial. *Id.* at 4. Petitioner requested standby counsel and agreed to Bonneson taking that role. *Id.*

The trial court addressed the motion to withdraw first, finding that there was no evidence of a complete breakdown of communication which would necessitate the appointment of new counsel. *Id.* at 5. The trial court reiterated that Bonneson had done an excellent job in the prior trial. *Id.* Further, it was Bonneson's job to make strategic choices, even when Petitioner may have disagreed with them, because Bonneson's training and experience better equipped him to make those decisions. *Id.* at 5–6. The motion to withdraw was therefore denied. *Id.* at 6.

The trial court then turned to Petitioner's motion to proceed *pro se*. *Id.* at 6–7. It conducted a thorough colloquy with Petitioner on his education, legal knowledge, and understanding of the rules of procedure. *Id.* at 7–9. The trial court also described the punishments Petitioner faced if

he was convicted. *Id.* at 9. Petitioner confirmed that he wanted to represent himself and that he had no conditions that would interfere with his ability to do so. *Id.* at 9–10. Petitioner stated that he chose self-representation because "I feel there's no other way to be adequately represented." *Id.* at 11. The trial court found Petitioner competent and his waiver of representation was free and voluntary. *Id.* at 11–12. Bonneson was kept on as standby counsel. *Id.* at 12.

After losing at trial, Petitioner filed a postconviction motion alleging that the trial court should have granted the motions to withdraw and appointed him new counsel and should not have found that his waiver of representation was voluntary. The motion was denied at the circuit court level. (Docket #26-4 at 36–37). Petitioner appealed on the grounds that the trial court erroneously denied the motions to withdraw and failed to make an adequate inquiry into the circumstances of those motions. *Id.* at 5–6. He tacitly abandoned the issue of whether he voluntarily chose self-representation.

The Wisconsin Court of Appeals upheld the denial of the motions to withdraw. It explained:

> On appeal, Brito argues that the circuit court erroneously exercised its discretion in denying the two motions, and that the court failed to make a sufficient inquiry into the bases for the motions. We address the last argument first, because if we agree that the court's inquiry was insufficient, we would not review the substance of its decisions on the motions.
>
> The parties agree that the circuit court must make a "meaningful inquiry" into the reasons for the defendant's motion. *See State v. Lomax*, 146 Wis.2d 356, 362, 432 N.W.2d 89 (1988). Brito argues that the court's inquiries here were too sparse to qualify as meaningful. We disagree. For both

motions, the court asked Brito himself why he wanted to replace current counsel, and each time Brito described his disagreement with certain tactical or legal decisions that counsel had made. Brito argues that the court should have made a detailed inquiry into all of the various specific disagreements that Brito had with counsel in earlier proceedings, but we do not read the case law to require such a detailed inquiry.

Brito also argues that the court erroneously exercised its discretion in denying the motions to replace counsel. We review decisions on such motions for erroneous exercise of discretion. *State v. Jones*, 2010 WI 72, ¶ 23, 326 Wis.2d 380, 797 N.W.2d 378. Brito argues that the circuit court should have granted his motions because the situation met one of the applicable factors, namely, that the alleged conflict with counsel "was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *See Lomax*, 146 Wis.2d at 359, 432 N.W.2d 89.

As written, this test is phrased in the past tense ("likely resulted"). The test is apparently meant for use by a circuit court in considering a postconviction motion or by an appellate court reviewing a case in which the defendant's motion was denied, and the defendant then went to trial represented by the unwanted attorney, giving the reviewing court a chance to consider the actual conduct of the trial counsel and the interaction between unwanted counsel and defendant. Here, however, Brito discharged the attorney and represented himself. Accordingly, in this situation we see this factor as a prospective one, meaning that we will look at whether the record at the time of the circuit court's decision to deny the motion showed that the conflict between Brito and counsel was so great that it was likely to result in a total lack of communication that would prevent an adequate defense and frustrate a fair presentation in the second trial. Viewed from this perspective, Brito has not persuaded us that the court erroneously exercised its discretion.

> Brito's argument is based mainly on the difficulties between Brito and trial counsel up to the time of the motions, including during the first trial. Assuming without deciding that Brito is correct that his earlier communication with counsel was not easy or without conflict, he has not shown that the circuit court was presented with a showing of a past "total lack" of communication, or that the history and information before the court pointed toward an inadequate defense going forward. Beyond the history of some difficulties in communication, Brito does not appear to point to anything new that had happened at the time of his two motions in early 2012 that should have caused the court to expect that communication at the second trial would be worse than at the first.

*Brito*, 2015 WL 5840711, at *1–2.

In this federal habeas action, Petitioner initially asserted four grounds for relief. (Docket #7 at 7–11). The Court dismissed three of the grounds because they were not presented to the state court. (Docket #12 at 3–4; Docket #22 at 2). The sole surviving ground is whether the trial court violated Petitioner's right to the effective assistance of counsel by denying the motions to withdraw. (Docket #7 at 7–8).

**3. LEGAL STANDARD**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*,

563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). In Petitioner's case, that would be the Wisconsin Court of Appeals' October 8, 2015 opinion, and not any decision of the trial court itself.

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting

*Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

**4. ANALYSIS**

Preliminarily, the Court notes that the propriety of Petitioner's claim in this court is shaky at best. "Federal habeas relief is only available to a person in custody in violation of the United States Constitution or laws or treaties of the United States, *see* 28 U.S.C. § 2254(a), and is unavailable to remedy errors of state law." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). Petitioner did not cite federal law as a basis for his appeal. (Docket #26-4 and #26-6). Instead, he relied upon Wisconsin case law on the assessment of a motion to withdraw and the inquiry that should accompany such a decision. *Id.* However, the state referenced the Sixth Amendment right to effective assistance of counsel in its appellate brief. (Docket #26-5). Respondent believes that Petitioner's argument in the state appellate court, "liberally construed," was one that he was denied effective assistance of counsel when Bonneson was not permitted to withdraw. (Docket #37 at 17). The Court is not so sure, but it has no choice but to press on in its review of the claim.

That is not the end of the Court's concerns. Petitioner's claim is, put simply, bizarre. It is presented as one alleging that he was afforded ineffective assistance of counsel, but it is not directly aimed at Bonneson's conduct. Rather, Petitioner says that the trial court forced an ineffective attorney on him by refusing to let Bonneson withdraw and appoint new counsel. Put another way, Petitioner asserts that he did not in fact wish to proceed *pro se*, but that if he did not, he would have been saddled with ineffective representation. It appears that this final point suffers from procedural default; Petitioner did not present it to the Wisconsin Court of Appeals. *Lieberman v. Thomas*, 505 F.3d 665, 669–70 (7th Cir. 2007). It is also not the trial court's conduct that is the subject of this habeas action, but instead the decision of the Wisconsin Court of Appeals.

Moreover, however it is styled, the claim is an uneasy fit within the framework for ineffective assistance of counsel. As the Seventh Circuit explains:

> A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 . . . (1984)[.]
>
> To satisfy the first element of the *Strickland* test, appellant must direct the Court to specific acts or omissions by his counsel. In that context, the Court considers whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. The Court's assessment of counsel's performance is "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" [*Id.* at 689.]
>
> . . .

> To satisfy the second *Strickland* element, appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome.

*Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013) (citations and quotations omitted). Generally speaking, when reviewing a state court's determination of an ineffective assistance claim, many layers of deference are at play. As *Blake* explains, claims of ineffective assistance are already assessed with deference to the defendant's counsel. Presenting such claims in the context of a habeas proceeding means that Petitioner must not only prove that the Court of Appeals' analysis was wrong, but additionally that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103; *id.* at 105 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so[.]") (citations and quotations omitted).

But this is not the question the Wisconsin Court of Appeals answered. Instead, it first determined that pursuant to state law, the trial court had made an adequate inquiry into the basis of the motions to withdraw. *Brito*, 2015 WL 5840711, at *1 (citing *State v. Lomax*, 432 N.W.2d 89, 92 (Wis. 1988). Second, again with reference solely to state law, the court found that the trial court had not abused its discretion in finding that the conflict between Petitioner and Bonneson fell short of "a total lack of communication that prevented an adequate defense and frustrated a fair

presentation of the case." *Id.* (quoting *Lomax*, 432 N.W.2d at 90). *Strickland* was never referenced.

Nevertheless, assuming one could find a viable path through this morass of problems, this Court cannot say that the Wisconsin Court of Appeals' decision was contrary to *Strickland*, or more specifically, that all fairminded jurists would agree that *Strickland*'s rule was violated. This requires an assumption that assessing whether there was a "total lack of communication" is analogous to determining whether Bonneson could provide effective assistance of counsel. From this perspective, the Wisconsin Court of Appeals appropriately found that although the communication between Petitioner and his counsel was strained, it did not reflect a total lack of communication. *Brito*, 2015 WL 5840711, at *2. Petitioner was on his third attorney in seven months, and it was clear that he would be unsatisfied with any representation provided to him, other than a lawyer that would simply do precisely what he demanded. Further, Bonneson was in the best position to continue representing Petitioner to and through the second trial, as he was intimately familiar with the case.

Petitioner's arguments to the contrary lack merit. He primarily discusses various instances where Bonneson was allegedly ineffective or which showed apparent conflict between himself and Bonneson. *See* (Docket #33 at 1–5, 8–9; Docket #41 at 1–2). This argument goes to the state law issue of whether the trial court conducted an appropriate inquiry into the motions to withdraw. Further, Petitioner's contention fails to establish that the Wisconsin Court of Appeals was completely unreasonable in deciding that there was something less than a total breakdown of communication.

Petitioner's next argument is that the judge, jury, district attorney, and Bonneson himself harbored racial animus toward him because they are Caucasian and he is Hispanic. (Docket #33 at 5–7; Docket #41 at 3). Petitioner offers no actual evidence of bias, even as little as a statement with racial overtones. Petitioner's contention is based solely on his delusional belief that he was convicted because of his race, not because he committed the subject crimes.

Finally, Petitioner claims that while he is not challenging the determination that he was competent to proceed *pro se*, he does challenge its voluntariness. (Docket #33 at 10; Docket #41 at 4). As the Court already observed, this issue is procedurally defaulted because it was not argued in Petitioner's appeal. Even if the argument were not defaulted, it is meritless for the reasons stated above. Petitioner was provided competent counsel more than once and fought with each of them. The problem was not with Petitioner's counsel, but with Petitioner himself and his unwillingness to take legal advice.

**5. CONCLUSION**

"The Sixth Amendment does not guarantee a friendly and happy attorney-client relationship." *United States v. Mutuc*, 349 F.3d 930, 934 (7th Cir. 2003). Though Petitioner and Bonneson undoubtedly had a less than happy relationship, Petitioner has not shown that the Wisconsin Court of Appeals unreasonably applied Supreme Court precedent in upholding the denial of Bonneson's motions to withdraw. Indeed, he has not even shown that its conclusion was wrong. The petition must, therefore, be dismissed with prejudice.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters

a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court discussed above, no reasonable jurists could debate whether the petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Finally, the Court closes with some information about the actions that Petitioner may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See id.* A party is expected to closely review all

applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that Petitioner's amended petition for a writ of *habeas corpus* (Docket #7) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of November, 2018.

BY THE COURT:

____________________________
J. P. Stadtmueller
U.S. District Judge